## CAPE FEAR LUMBER CO. v. MATHESON.

1. SPECIFIC PERFORMANCE—FRAUD—MISTAKE.—A party to a contract under seal, drawn by his agent at his request, who executes it without reading it, and who has shown no fraud, concealment or misrepresentation, cannot be relieved of specific performance on ground of fraud or mistake.
2. Rehearing refused.

Before DANTZLER, J., Marlboro, August, 1902. Affirmed.

Action by Cape Fear Lumber Co. against Alexander J. Matheson. From Circuit decree, defendant appeals.

*Mr. Knox Livingston,* for appellant, cites: *As to when equity interferes in cases of written instruments:* 1 Story Eq., sec. 155; 2 Pom. Eq. Jur., secs. 839, 860, 868; Wat. on Spec. Per., sec. 160; Fry on Spec. Per., sec. 476; 12 L. R. A., 273; 4 Rich. Eq., 313. *The difference between enforcing and resisting specific performance:* 2 Story, secs. 769, 770; 2 Pom., secs. 889, 861, 862; 3 Id., 1405; 1 Story, sec. 161; 21 S. C., 119; 29 S. C., 598; 32 S. C., 203. *As to measure of proof required of plaintiff:* 11 Rich., 227; 32 S. C., 533; 41 S. C., 354. *Instrument sued on is not obligatory on both parties:* 3 Pom. Eq. Jur., sec. 1405; Riley Eq., 177; 12 How., 127; 4 McLean, 21; 6 Paige, 288; 42 N. Y., 509; 1 John Ch., 370; 40 Barb., 425; 115 Mass., 244; 10 Wall., 339; 57 N. Y., 219; 16 N. J. Eq., 147; 41 Mich., 298; 54 Md., 312; 55 L. R. A., 330. *Specific performance only granted where there is no adequate legal remedy:* 2 Story

Eq. Jur., secs. 717, *et seq.;* 22 Ency., 909; 5 Otto, 202; 2 Wheat., 336; 12 L. R. A., 239; 2 Strob. Eq., 77; 5 Rich. Eq., 289; 32 S. C., 203, 529; 15 Ency., 1064, 1070; 62 Vt., 60; 1 Pom. Eq. Jur., sec. 446; 115 Mass., 244; 8 Wall., 557; 10 Id., 339; 107 N. C., 717. *Specific performance not usually granted as to personalty:* 2 Story Eq. Jur., secs. 716, 746, *et seq.;* 3 Pom., secs. 1402, 1404; 2 Hill Ch., 126; 1 Green. Ev., sec. 271; 11 Rich., 621; 2 Barb., 613; 55 L. R. A., 329; 7 Ency., 241. *Granting specific performance is a matter of discretion:* Fry on Spec. Performance, sec. 25; Waterman, Id., 435; 2 Story, 742; 3 Pom., 1404; Bail. Eq., 373; 5 Rich. Eq., 289; 7 Id., 385; 1 Hill Ch., 57; Riley Eq., 177; 5 S. C., 462; 41 S. C., 354; 53 S. C., 572; 48 S. C., 175; 56 S. C., 252; 64 S. C., 520.

*Messrs. T. W. Boucher, Johnson & Johnson,* contra. *Mr. Boucher* cites: *As to what is an option and its enforcement:* 21 Ency., 920, 928; 22 Ency., 941; 7 Ird., 190; 1 Pom. Eq. Jur., 224; Fry on Specific Performance, 11; 3 Pom., 1402; 48 S. C., 175; 34 Am. St., 673; 82 Ala., 370; 33 Fed. R., 530; 45 Ala., 134; 30 Am. St. R., 47; 88 Am. D., 485; 24 Am. St. R., 17; 32 Id., 669; 88 Mo., 478; Wat. on Spec. Per., sec. 169; 8 Wall., 557; 3 Cush., 224; 5 L. T. N. S., 385; 6 Gray, 25; Wat. on Spec. Per., 200; 53 Am. Dec., 526; 27 S. C., 376; 12 East., 10. *As to relief by reason of fraud or deceit:* 20 Ency., 2 ed., 831; 4 L. R. A., 483; 2 Pom., secs. 828, 288, 231; 1 Story Eq. Jur., 105, 146. *As to varying writing by parol:* 13 S. C., 340; 42 S. C., 1; 39 S. C., 290; 33 S. C., 243; 29 S. C., 557; 63 S. C., 410. *Carelessness not ground for relief:* 68 Am. Dec., 653; A. & E. Dec. in Eq., 542; 9 S. C., 40; 53 S. C., 35; 21 S. C., 235; 2 Strob. Eq., 149; Story Eq., secs. 110, 127, 146, 151; Adams Eq., 171; 3 Mos., 10; 33 N. Y., 676; 17 Johns, 373; 3 Allen, 331; 2 Strob. Eq., 148; 2 S. C., 108. *Burden as to fraud or deceit is on appellant:* 5 L. R. A., 159; 97 U. S., 624; 1 Bro. Ch., 338; 1 Ves., Sr., 317; 6 Ves., Jr., 328; 2 Johns Ch., 585, 630; 2 Cranch, 444.

The opinion was filed January 12, 1904, but remittitur held upon petition for rehearing until

April 30, 1904.   The opinion of the Court was delivered by

JUDGE ERNEST GARY, *acting Associate Justice in place of* JUSTICE WOODS, *disqualified.*   On the 17th day of October, A. D. 1898, the appellant, A. J. Matheson, executed to the respondents, the Cape Fear Lumber Company, what is termed an "option" on certain timbers on a tract of land in the county of Marlboro, and also certain other rights set forth in said "option."   The same being under seal and executed in the presence of two witnesses is set out in the complaint.

On or about the 27th day of September, A. D. 1898, the appellant tendered a deed to the respondents.   The said deed was refused, for the reason that the same limited the timber to *pine* and size to *twelve inches at the stump;* same being not in accordance with the written option held by the respondents.

On the 14th day of January, and before the expiration of the ninety days given in the option, the respondents tendered to the appellants five hundred dollars in gold and demanded from him a deed in accordance with the written option.   The appellant declined to accept the money, and refused to execute a deed in any form other than the one tendered by defendant, Matheson.

Soon thereafter this suit was entered by the respondents by the service of the summons and complaint, which is fully set out in brief.   The prayer of said complaint is as follows:   "1. That the defendant be required specifically to perform said agreement, and on the payment of the purchase money, execute a conveyance to said plaintiff in accordance with the terms of said contract.   2. That the defendant, his agents and servants, be restrained and enjoined from cutting or in any manner interfering with the timber on said land, or in any manner disposing of the property above mentioned.   3.

For such other and further relief as to justice and equity may appertain. 4. For the costs of this action."

The defendant, appellant, answered in due time, and by his answer attempts to defeat this contract on the grounds, first, of mutual mistake, and then, of fraud and deceit of the other parties. The case came on to be heard by his Honor, Judge Dantzler, at the spring (1902) term of the Court, and he filed his decree, granting a judgment as prayed for in the complaint, for specific performance; from which decree the appellant appeals to this Court upon numerous exceptions, which in different form and in different language impute error to the Circuit Judge in decreeing specific performance of the option sued on.

The issue in this case is mainly a question of fact, upon which question there is a direct conflict of testimony as to what were to be the terms of the written option; the defendant, Matheson, contending that a mistake in the formal execution of the instrument was made by the scrivener, his book-keeper, who drew it up, and the plaintiffs contending that the instrument itself is in the form agreed upon by the parties at the time. Upon this question the Circuit Judge finds in favor of the respondent in these words: "The parties occupied no *fiduciary* relation to each other; they were dealing *at arms' length,* and were fully competent to contract. They had every opportunity of knowing the contents of the option signed by the defendant, and of understanding what it should have contained and did contain. There is no evidence of any concealment on the part of Mitchell, the agent of the plaintiff." The burden of proof to show mistake is upon the appellant, and we think that he has not shown, by the preponderance of evidence, such a state of facts as would entitle him to the equity that he seeks to invoke in this cause.

The rule is correctly stated by Chancellor Dargan, in *Murrell* v. *Murrell,* 2 Strobhart's Equity, page 153, in the following language: "If parties come to a settlement, and will not see their rights in their true character, or use proper

diligence in ascertaining them, or, perceiving their rights, think proper by their silence to waive them, there is no reason why this Court or any other should be called upon to protect them from the consequences of their own default or folly. There are but few settlements or accountings in which, by a searching scrutiny, some errors or omissions might not be detected; and this Court will not open them, when by proper vigilance they might have been guarded against, and unless some of the circumstances above adverted to as affording grounds for relief are alleged and proved. A party fully competent to protect himself under no disability; advised as to all circumstances by which he may be saved in his rights; or in a situation where he might by due diligence be so advised; not overreached by fraud, concealment or misrepresentation, nor the victim of a mistake against which prudence might have guarded; has no right to call upon the Courts of justice to protect him against the consequences of his own carelessness, and to disturb the peace of society by his clamors for that justice which he voluntarily or negligently surrendered."

The "Case" shows by the testimony of the defendant, Matheson, that, after directing his book-keeper to draw the option set out in the complaint, he went away from him, "and didn't go about him until they called me for my signature. I came up and did not read it at all; signed it, as I always do. I did not know but what it was like the other paper until I went to make the deed, and when I went to make it, I took the option out, to see how to draw the deed, and I saw these differences." And passing upon this testimony, the Circuit Judge uses this language: "The defendant, a gentleman of intelligence, of large business capacity, and of large business interest, fully competent to transact his affairs, cannot successfully plead fraud under the facts in this case, in the light of his own testimony. He had every opportunity of examining the obligation in question; he failed and neglected to do so and cannot now complain"— citing *Baum* v. *Raley,* 53 S. C., 55.

The case as presented on appeal totally fails to show any element of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of any inequitable conduct on the part of the plaintiffs or their agent, and this we think was necessary to warrant a court of equity to reform the solemn obligations of the parties formally executed in the presence of witnesses and under seal. As was said by Chancellor Harper, in *Gilchrist* v. *Martin,* Bailey's Equity, 485, "The notion of a mistake seems to me to involve the having been misled by some false appearence. If a man spontaneously take up an erroneous impression, not from any deceptive evidence but merely from the suggestion of his own mind, this can hardly be called a mistake."

The rule is very tersely stated by Mr. Justice Pope, in *Coates & Sons* v. *Early,* 46 S. C., page 229, 24 S. E., 305, where this Court held that, "In order to relieve a party of the consequences of an honest mistake, it must be shown that the other party to the contract in some way caused the mistake, and that party making the mistake could not by due diligence have avoided it." From the foregoing, we see no error in the decree of the Circuit Judge decreeing a specific performance of the contract sued on, the appellant having failed to show by the preponderance of the testimony that the option was not executed in accordance with the agreement, of the parties.

It is, therefore, ordered, that the appeal herein be dismissed and the judgment below affirmed.

Petition for rehearing refused, April 30, 1904.