245 P.2d 415

**LUMBERMEN'S INS. CO. et al. v. HEINER.**

No. 5582.

Supreme Court of Arizona.
June 16, 1952.

Rehearing Denied July 8, 1952.

appellee Bernard Heiner, and against appellants Lumbermen's Insurance Company, Massachusetts Bonding and Insurance Company, and Benjamin Solot and Mark Klafter as individuals, in the sum of $536.36 together with interest and costs.

The facts are that Solot and Klafter were copartners engaged in the real estate and insurance business in Tucson and acted as agents for the above-named insurance companies, soliciting various kinds of automobile insurance written by their principals.

For some reason not apparent in the record these insurance companies issued a combination automobile insurance policy in which the Lumbermen's Insurance Company, for a specific premium named therein, insured automobiles against loss or damage from fire, lightning, theft and what is known as "comprehensive coverage" which includes every loss or damage to the automobile except that suffered by collision. The Massachusetts Bonding and Insurance Company covered all loss for personal injury, property damage from collision, etc., for which it also charged a separate specific premium.

The automobile involved in this case is a 1937 model 40 Buick sedan and was owned by Sophie Smith, mother of appellee Bernard Heiner, until the time of her death in June, 1947. Through Solot and Klafter the appellant insurance companies had been carrying the insurance on this particular car for a number of years. At the time of

Richard H. Chambers, of Tucson, Allan K. Perry, of Phoenix, for appellants.

William Gordon, of Tucson, for appellee.

PHELPS, Justice.

This is an appeal from a judgment of the superior court of Pima County in favor of

the death of deceased on June 10, 1947 the current policy was in full force and effect and carried full coverage including comprehensive coverage above explained.

Prior to the expiration date of this policy, on August 12, 1947, a Mr. Walker, an employee of Solot and Klafter called a Mr. Tannenbaum, attorney, for the estate of Sophie Smith, deceased, by phone and solicited a renewal of the policy. After some conversation Tannenbaum authorized him to write the renewal policy and suggested that it be made to insure both the estate of Sophie Smith deceased, and Bernard Heiner who was then using and driving the car and who was a beneficiary under the will of deceased.

In due course the renewal policy was issued and mailed to Tannenbaum together with letter of transmittal and statement of the premiums due. Tannenbaum in turn mailed the policy and enclosure to Abraham Smith, surviving spouse of deceased and executor of her estate who was then temporarily in Philadelphia. Later Smith returned the policy and enclosures to Tannenbaum together with his check for $41 covering the premium of $7 due the Lumermen's Insurance Company and $34 for coverage by the Massachusetts Bonding & Insurance Company.

The renewal policy was identical with the policy which expired on August 12, 1947, except that appellant had eliminated therefrom the comprehensive coverage clause.

On July 24, 1948 the Buick automobile was damaged by flood water sweeping down upon it while being driven across an arroyo in the city of Tucson. Claim was made against the insurance companies for the damages to the car. They denied liability and action was thereupon instituted with the result above mentioned.

 Appellant Massachusetts Bonding and Insurance Company contends that it is not liable under its contract for the damages sustained. We agree with this contention. The contract is clearly severable both as to liability assumed and as to premiums charged. The Lumbermen's Insurance Company assumed risk only for loss or damage to the Buick from theft, fire and lightning and if the comprehensive coverage clause is a part of the renewal contract it assumed the further risk of damage by flood waters as claimed in this cause of action. The policy clearly shows upon its face that the Massachusetts Bonding and Insurance Company insured appellee only against loss due to personal injury sustained as a result of the operation of the automobile and for injuries to the personal property to others for which it charged a premium of $34. The policy states upon its face that it is a severable contract of insurance and limits the liability of each to the coverage named therein. We therefore hold that the trial court erred in rendering judgment against the Massachusetts Bonding and Insurance Company.

Whether the Lumbermen's Insurance Company is liable for this particular coverage depends upon the law relating to the subject matter of this controversy. There is no question but that the renewal policy omitted comprehensive coverage as a part thereof and there is no dispute but that the policy showed upon its face that such coverage had been eliminated nor is there any dispute as to the contents of the letter of transmittal. It stated that the new policy covered the 1937 Buick for fire and theft, and that the other liability is shown as $10,000 to $20,000 bodily injury liability and a further $5,000 *bodily injury liability,* (the last is a mistake and was intended to cover personal property liability) showing a total premium of $41. The policies themselves, however, break down the premiums and show for what purpose they were charged. The bill for premium contains the same statement as the letter of transmittal relating to the coverage.

■ An examination of the authorities convinces us that the law does not impose upon the insured the duty to inspect a policy issued by an insurance company under the circumstances of the instant case. Whether Abraham Smith, surviving spouse of Sophie Smith, deceased, and executor of her estate, read the policy is not known. The record discloses that he died in September 1948 before his testimony could be taken. Heiner, the other party to the complaint did not read the policy nor did he ever see it until after the loss had been sustained.

However, whether he did or not is not determinative of the law of this case for the reason above stated. Northwestern Nat. Ins. Co. v. Chambers, 24 Ariz. 86 at page 94, 206 P. 1081; German American Ins. Co. of New York v. Darrin, 80 Kan. 578, 103 P. 87.

■ An examination of the authorities further convinces us that where, as in this case, a policy has been issued to an insured carrying specific automobile insurance coverage, an oral agreement to renew the original policy, in the absence of an agreement to specifically exclude some portion thereof, carries with it the duty of the insurance company to incorporate in the renewal policy the same coverage as contained in the preceding policy.

"In the case of the renewal of an existing policy, it is presumed, unless a contrary intention appears, that the parties intend to adopt in the renewal policy the terms and conditions of the expiring policy. * * *" 92 A.L.R. 239(e).

See also Massachusetts Bonding and Ins. Co. v. R. E. Parsons Electric Co., 8 Cir., 61 F.2d 264, 92 A.L.R. 218; Rice v. Provident Life & Acc. Ins. Co., 231 Mo.App. 560, 102 S.W.2d 147, 151.

■ An examination of the transcript of the testimony discloses a conflict in the evidence as to whether the renewal policy was intended to include the comprehensive coverage clause. The witness Walker testi-

fying for appellant insurance companies stated that he told Tannenbaum, attorney for the estate of deceased with whom he arranged for the issuance of the new policy, that it would not carry comprehensive coverage. Tannenbaum denied this and testified that comprehensive coverage was not mentioned by Walker in the negotiations. The trial court found this issue in favor of appellee. We have repeatedly held that we are bound by such finding when the evidence is in conflict. It follows, therefore, in the absence of a contrary intention being shown by the evidence, that the parties intended to adopt in the renewal agreement the terms and conditions of the expiring policy. The trial court so ruled.

■ It further follows that the appellee Heiner who never saw the renewal policy until after the loss occurred had the right to rely as he did upon the mistake of fact that the comprehensive coverage clause was incorporated in the renewal policy of insurance. It was the duty of appellant Lumbermen's Insurance Company to advise the insured of the deletion of the comprehensive coverage clause from the renewal contract of insurance. This the trial court found it did not do. Such failure to speak constitutes inequitable conduct on its part which when coupled with the mistake of fact on the part of insured authorizes a court of equity to reform the renewal contract to conform with the old policy. National Fidelity Life Ins. Co. v. Gerard, 175 Okl. 219, 52 P.2d 1; Hayes v. Travelers Ins. Co., 10 Cir., 93 F.2d 568, 125 A.L.R. 1053.

We therefore sustain the trial court's ruling that the renewal policy should be reformed to carry the identical coverage carried in the old policy and that appellant Lumbermen's Insurance Company is liable in damages to appellee Heiner for the damage to his automobile which the evidence shows he sustained as a result of the flood.

■ Appellant next contends that there is no evidence to sustain the amount of the judgment awarded. The only evidence introduced in the record to sustain the amount of the damage awarded is that of the mechanic Webster G. Rex. Mr. Rex testified that he estimated the amount necessary to put the car in first class condition to be $536.36. It will be remembered that whatever damage had been sustained was due to flood, which it was claimed had penetrated the engine and deposited silt in the mechanism thereof. The engine was not torn down by him nor, insofar as the record discloses, was there any attempt made by the mechanic to ascertain just what the condition of the inside of the engine might be. His estimate is based upon the assumption that the parts damaged would have to be either thoroughly cleaned, overhauled or replaced by new parts. He stated that if a car is covered by water, there is always a certain amount of silt in such water that gets inside the working parts of the car such as the transmission, differential,

brakes, clutch, etc., and that it burrows into the assembly and has to be disassembled and cleaned. Upon cross-examination the witness stated that he never did work on the car or see inside the engine, that his estimate was in the nature of a guess and that he could not determine what it would cost to repair the damage unless he disassembled the car and thoroughly inspected every piece and put it back together in working condition. He said he had listed parts that might not have to be used, and labor that might not have to be done and finally he said it was possible that when the car was disassembled that he wouldn't say the cost would be over or under $250. This is purely speculative and is not the best evidence appellee was capable of producing, and we believe, fails to sustain the judgment in the amount awarded.

■ The testimony of Mr. Heiner is that he had spent $200 in repair of the car but that it still was not in as good condition as it was previous to the flood. The mechanics who worked on the car were not called to testify to what they found and no excuse was given for their failure to testify. The record in the case further shows that the car had been run approximately two years after the flood up to the time of the trial in October 1950, and was still in running condition. The car at that time had been in use for thirteen years. The fact that the Buick had been used for two years subsequent to the flood is certainly persuasive evidence that new parts were not essential to replace parts which had come in contact with flood waters, nor was an overhaul of the various parts listed in the estimate imperative. We hold, therefore, that there is no substantial evidence to support the judgment of the court in the sum of $536.36 and in fact there is no substantial evidence of damage in any sum in excess of $200.

■ The judgment rendered by the trial court runs against Solot and Klafter as individuals. Upon what theory they were held to be liable is not clear. They were the agents of the insurance companies in soliciting and writing the renewal policy of insurance on the Buick car. However, the record shows they were authorized by the insurance companies to do what they did in the premises and therefore their acts were the acts of their principal. Under such circumstances the principals alone are liable. 2 Am.Jur., Agency, Sec. 315.

The judgment of the trial court is reversed as to appellants Massachusetts Bonding and Insurance Company and Solot and Klafter, agents of the insurance companies, with directions to enter judgment in their favor. Judgment is reversed as to Lumbermen's Insurance Company and remanded for a new trial on the sole issue of damages for the reason above stated unless within ten days from date of the mandate appellee enters a remittitur in the sum of $336.36.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.